OPINION
This appeal is taken from a final judgment of the Juvenile Division of the Portage County Court of Common Pleas. Appellant, Melissa Potts, appeals from the juvenile court's judgment terminating her parental rights and granting permanent custody of her minor daughter, Listi Anne Ranker ("Listi") to appellee, Portage County Department of Human Services ("DHS").
The following procedural history is relevant to this appeal. Appellant, Listi's natural mother, and Timothy Ranker ("Mr. Ranker"), Listi's natural father, are the parents of the child. Listi was born on June 30, 1997 and has been in the custody of DHS since the day after she was born. DHS intervened when it received a referral that the parents were having problems with Listi, and that she was born with a low apgar score, which assesses the health and medical condition of a newborn infant. Listi has remained in foster care since she was released from the hospital, and has a thriving relationship with her foster parents.
A case plan was drafted for the parents on July 25, 1997. There were five objectives set forth in the case plan for both parents to follow: (1) learn and demonstrate appropriate parenting skills, and participate and successfully complete a parenting course; (2) undergo drug/alcohol assessment and become drug/alcohol free; (3) appellant become mentally stable and follow through with her appointments and recommendations by Kevin Coleman Mental Health Center; (4) participate and successfully complete a sexual offender specific treatment program; and (5) cooperate with DHS, and do what is in Listi's best interest.
An amendment to the case plan required both parents to submit to urine screens. However, it was later determined by a magistrate that only Mr. Ranker was to complete these screenings.
On March 3, 1999, DHS filed a motion pursuant to R.C. 2151.413 seeking permanent custody of Listi. On that same day, Jeffrey Myers was appointed guardian ad litem on behalf of the child. A permanent custody hearing was held on May 5, 1999 regarding the motion. At the permanent custody hearing, DHS presented two witnesses: (1) Barbara Niepsuj, ("Ms. Niepsuj") a placement worker for DHS, who develops case plans to help the parents resolve their problems and work toward reunification; and (2) Patsy Giulitto, ("Ms. Giulitto") an investigator with the Portage County Department of Human Services Child Support Enforcement Agency.[1]
Appellant presented one witness on cross-examination, Penny Ray, who was a placement supervisor with DHS for this case. The juvenile court also received a written report from the guardian ad litem which recommended that DHS's motion for permanent custody be granted.
The juvenile court heard testimony from these witnesses and received into evidence various DHS exhibits and one exhibit from appellant. Although appellant and Mr. Ranker were present with counsel in court during the permanent custody hearing, neither one testified on their own behalf.
At the end of the hearing, the juvenile court granted the motion for permanent custody. Thereafter, on June 30, 1999, the juvenile court issued its judgment entry finding, by clear and convincing evidence, that it was in the best interest of the child to grant permanent custody to DHS for purposes of adoption, which would result in appellant and Mr. Ranker being divested of all parental rights.
It is against this judgement granting permanent custody of her daughter to DHS that appellant asserts the following two assignments of error for our consideration:
 "[1.] The Trial Court erred and abused its discretion when it granted permanent custody of the minor child to the Portage County Department of Human Services and in its decision to divest Melissa Potts of her parental rights in regard to the minor child.
 "[2.] The Trial Court erred in that the minor child could have received a permanent placement without the granting of permanent custody to the Department of Human Services."
 In her first assignment of error, appellant contends that the juvenile court erred in finding that the child could not be placed with her within a reasonable time because Ms. Niepsuj could not say that Listi could not be placed with appellant or Mr. Ranker within a reasonable time. Appellant then points out that Ms. Niepsuj testified that each of the case plan objectives could have been accomplished within a reasonable amount of time, such as six months. Further, appellant challenges the grant of permanent custody to DHS on grounds that it was not in the best interest of the child because DHS never attempted to re-contact any of the relatives to determine whether they would reconsider providing Listi with a home, and appellant was able to feed, clothe, and has never abused the child. Stated simply, appellant argues that the two-prong test outlined in R.C. 2151.414(B) has not been satisfied. In order to address appellant's claim, it is necessary to review the applicable law governing a motion for permanent custody.
R.C. 2151.414 sets forth the guidelines that a juvenile court must follow. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing and provide notice upon the filing of a motion for permanent custody. These requirements were fulfilled by the juvenile court in this matter.
Following the hearing on the motion for permanent custody, R.C.2151.414(B) permits the juvenile court to grant permanent custody of the child to the human service agency if the court determines, by clear and convincing evidence, that: (1) it is in the best interest of the child to grant permanent custody to the agency; and (2) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. Accordingly, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In re Frary (Dec. 17, 1999), Geauga App. No. 98-G-2132, unreported, at 4, 1999 WL 1313623.
As the child in this case was not orphaned or abandoned, the focus of the juvenile court turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. To support a finding that a child cannot be placed within a reasonable time with either of his/her parents, the factors listed under R.C. 2151.414(E) must be considered.[2] In other words, the juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (12) exist with respect to each of the child's parents.
Next, the juvenile court proceeds to an analysis of the child's best interest. In determining the best interest of the child, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.[3]
To summarize, the juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the agency only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion and that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(B); In re Williams S. (1996), 75 Ohio St.3d 95,99. "Clear and convincing evidence" is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368.
Once the clear and convincing standard has been met to the satisfaction of the juvenile court, a reviewing court "must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." Holcomb at 368. An appellate court will not overturn the juvenile court's decision to terminate parental rights and award permanent custody to an agency unless the judgment is unsupported by clear and convincing evidence. Id. See, also, Frary at 4.
Now we turn to the case at bar and appellant's assertion that the two-prong test established in R.C. 2151.414(B) has not been satisfied. In its June 30, 1999 judgment entry granting permanent custody of Listi to DHS, the juvenile court made the two required determinations by clear and convincing evidence. Initially, the juvenile court proceeded under R.C. 2151.414(B) by finding that the child was neither abandoned nor orphaned, but that the child could not be placed with either parent within a reasonable time or should not be placed with the parents.
In making this finding, the juvenile court was under division (E) of the permanent custody statute. Pursuant to R.C. 2151.414(E), the juvenile court was required to enter such a finding if the court determined, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (12) existed.
In the present case, although the juvenile court did not make reference to a particular revised code section, it seems that the court relied on R.C. 2151.414(E)(1) and (4). R.C. 2151.414(E)(1) provides the following:
 "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 R.C. 2151.414(E)(4) states that the parent "has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"
As to R.C. 2151.414(E)(1), the juvenile court found that, notwithstanding the reasonable case planning and diligent efforts by DHS to assist appellant and Mr. Ranker in remedying the problems that initially caused Listi to be placed outside the home, appellant and Mr. Ranker have failed continuously and repeatedly to substantially remedy the conditions causing Listi to be placed outside of the home. The record reflects that as early as July 1997, DHS formulated a case plan in order to reunify appellant and Mr. Ranker with their daughter.
At the time of the permanent custody hearing, appellant and Mr. Ranker did not complete the parenting course as required by the case plan. Appellant, however, did complete the drug/alcohol evaluation.[4]
Nevertheless, Ms. Niepsuj indicated that appellant had not achieved the third objective by following through with her mental health service referrals. Ms. Niepsuj testified that at the time of her pregnancy, appellant was taking mediation for a bipolar disorder and DHS asked her to schedule and keep all mental health appointments with the Kevin Coleman Mental Health Center. Appellant failed to do so. Appellant also failed to complete the fourth objective, which required her to complete a sexual offenders program.[5]
Ms. Niepsuj also indicated that appellant was asked to cooperate with DHS and do what was in Listi's best interests, which included attending visitation with her daughter. As the caseworker for this matter, Ms. Niepsuj had knowledge regarding appellant's attendance to these visits. DHS offered appellant an opportunity to visit with her daughter twice a week beginning in July 1997. Ms. Niepsuj testified that there was consistency in visitation up until October 8, 1997. Thereafter, the visits became more sporadic. As visitation became less consistent, Ms. Niepsuj discussed with appellant and Mr. Ranker the importance of bonding and continuing contact with their daughter in order to achieve reunification. DHS offered appellant a total of one hundred and sixty-two visits with Listi. Nevertheless, appellant missed one hundred and twenty-five or 77 percent of the visits.
Although appellant and Mr. Ranker did bring gifts for Listi on Christmas, at the end of the visit, they took all the gifts back. There is evidence in the record that appellant and Mr. Ranker brought baby food and bottles to the visits on occasion. However, Ms. Niepsuj testified that the last time the parents brought any food for their daughter was in November or December 1997.
Parenting lessons were also incorporated into these visits. But during one visit, Ms. Niepsuj testified that appellant was in a bad mood, so she sat in the corner during the entire visit, and would not talk to her daughter or pick her up. Ms. Niepsuj also indicated that appellant had difficulty diapering the child and was unable to remember what she learned from one visitation to the next.
By the time the permanent custody hearing on May 5, 1999, appellant had not come to DHS to continue visitation with her daughter since September 2, 1998 and had not communicated with her by telephone, letters, or cards. On that final visit, Ms. Niepsuj testified that appellant stayed for only fifteen minutes even though each visit was to be an hour long.
Furthermore, Ms. Niepsuj discussed with appellant and Mr. Ranker on thirty-five separate occasions the case plan requirements, any progress made and the importance of completing the case plan in order for DHS to recommend reunification. When the requirements of the case plan were discussed, appellant and Mr. Ranker were advised, on fifteen occasions, that if it was not completed, DHS would be forced to file a permanent custody motion, and if that was granted, then they would lose their parental rights.
In light of the evidence introduced at the permanent custody hearing, it is manifestly apparent that appellant continuously failed to remedy the conditions causing her child to be placed outside the home. Noncompliance with the case plan is a ground for termination of parental rights. In re Brofford (1992), 83 Ohio App.3d 869, 878. Appellant failed to complete all the case plan objectives and failed to utilize the psychological, social, and rehabilitative services that were made available to her by DHS for the purpose of changing her conduct. Hence, the juvenile court's judgment as to the existence of the condition set forth in R.C. 2151.414(E)(1) is supported by clear and convincing evidence.
Since the juvenile court's judgment regarding R.C. 2151.414(E)(1) was supported by clear and convincing evidence, we need not address whether there was evidence to support the existence of the factor listed in R.C.2151.414(E)(4). Frary at 7. However, if we were to examine R.C.2151.414(E)(4) as a basis for the juvenile court's judgment, there would be clear and convincing evidence to support the conclusion that appellant failed to regularly visit, communicate, or support her daughter when she was able to do so.
As we noted earlier, DHS offered appellant and Mr. Ranker an opportunity to visit with their daughter twice a week beginning in July 1997. There was consistency in the visits up until October 8, 1997. Thereafter, the visits became more sporadic. As visitation became less consistent, Ms. Niepsuj discussed with appellant and Mr. Ranker the importance of bonding and continuing contact with their daughter if reunification was to occur. Although DHS offered appellant a total of one hundred and sixty-two visits with Listi, appellant missed one hundred and twenty-five or 77 percent of the visits.
Ms. Giulitto, an investigator for the Portage County Department of Human Services Child Support Enforcement Agency, testified that both parents have child support obligations. Specifically, each parent was ordered to pay $50 a month plus poundage. Mr. Ranker has not made any child support payments while appellant made only two payments on November 26, 1997 and December 17, 1997.
Accordingly, appellant demonstrated a lack of commitment towards her daughter through her sporadic visits, the eventual cessation of visitation altogether, and the failure to pay her child support obligations.
In her brief before this court, appellant contends that DHS has never strayed from the goal of seeking permanent custody of the child. Appellant maintains that DHS admitted that it had not fulfilled its role in attempting to reunify the child with her parent. Essentially, appellant suggests that DHS simply abandoned the goal of reunification, thereby making permanent custody a foregone conclusion.
When a juvenile court relies on R.C. 2151.414(E)(1) to terminate parental rights, the appropriate inquiry is whether the agency engaged in "reasonable case planning and diligent efforts" to remedy the problems that initially caused the child to be placed outside the home. In the instant matter, there is evidence in the record to support the conclusion that DHS did exercise reasonable case planning and diligent efforts to assist appellant in being reunited with her daughter. For instance, DHS developed a case plan and emphasized to the parent the importance of completing it in order to achieve reunification. DHS provided biweekly visitations between appellant, Mr. Ranker and Listi, and they were advised of the importance of bonding and continuing contact with their daughter if reunification was to occur. Appellant was encouraged to complete the case plan, advised, verbally and in writing, of her duties and obligations under the case plan, and made aware of the consequence if she failed to follow through. Finally, DHS amended the case plan on May 7, 1999 by changing the goal to adoption only after the permanent custody hearing was held on May 5, 1999 wherein the juvenile court granted the motion for permanent custody.[6] Appellant's failure to satisfy all case plan objectives is attributable to her own behavior, not to any lack of planning, effort or notice on the part of DHS.
Therefore, the juvenile court correctly adjudged that the child could not be placed with either parent within a reasonable period of time or should not be placed with the parents. Having done so, the juvenile court proceeded to the second prong of the required analysis, to wit: a determination that it was in the best interest of the child to grant permanent custody to DHS. The juvenile court ultimately concluded that it was in the best interest of the child that permanent custody be awarded to DHS.
When determining a child's best interest, R.C. 2151.414(D) requires that the juvenile court consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."[7]
 This court has held on several occasions that the provisions of R.C. 2151.414(D) are mandatory and "must be scrupulously observed." In the Matter of Hommes
(Dec. 6, 1996), Ashtabula App. No. 96-A-0017, unreported, at 4, 1996 Ohio App. LEXIS 5515. See, also, In the Matter of Ethington (July 23, 1999), Trumbull App. No. 98-T-0084, unreported, at 3, 1999 WL 562714; In the Matter of Alexander (Dec. 19, 1997), Trumbull App. No. 96-T-5510, unreported, at 6-7, 1997 Ohio App. LEXIS 5742. Thus, the failure to discuss each of the factors set forth in R.C. 2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error. There must be some indication on the record that the trial court considered all four factors found in R.C. 2151.414(D) when reaching its judgment. Moreover, no factor is solely dispositive of the issue, and each needs to be given proper consideration. Ethington at 9; Alexander at 7; Hommes at 6.
The juvenile court's judgment entry reveals that the court considered in detail all the enumerated factors in R.C. 2151.414(D). Regarding the interaction of Listi with her foster parents, testimony was presented that Listi has been in the same foster home since she was released from the hospital. Listi is doing well in their care, and she has shown a strong bond with the foster parents, as they are the only parents the child knows.
Also, the foster parents are interested in adopting the child as well. In the event that Listi was placed in an adoptive home and that adoptive home would not be the foster parents, Ms. Niepsuj testified that the child would be able to assimilate in another home because she has shown an ability to bond. Finally, the foster parents have expressed a willingness to assist Listi in such a situation.
As for Listi's relationship with her mother, appellant seemingly had a lack of interest in supporting her daughter, or maintaining any communication or an ongoing relationship with her. As we noted earlier, by the time the permanent custody hearing on May 5, 1999, appellant had not come to DHS to continue visitation with her daughter since September 2, 1998. In other words, there has been a complete discontinuation of visitation and communication by appellant with her daughter. The juvenile court describes appellant and Mr. Ranker's actions accurately:
 "* * * [T]he parents made themselves strangers with their own child and * * * that the Portage County Department of Human Service's suggests that there is no bonding with either of these parents due to the fact that the parents have not seen their child for seven (7) months."
 At the permanent custody hearing, Ms. Niepsuj indicated that a number of relatives had been approached in the summer of 1997 about being a relative placement for Listi. The juvenile court considered the contact that other members of appellant and Mr. Ranker's family had with the child, including the maternal great grandmother, maternal grandmother, maternal uncle and paternal aunt.
During the permanent custody hearing, Ms. Niepsuj testified that Listi had seen her maternal great grandmother twice and her maternal grandmother twice even though they were told they could call and schedule a visit with the child. Neither the maternal great grandmother nor the maternal grandmother expressed an interest in taking Listi. The maternal uncle, appellant's brother, visited with Listi on two occasions but withdrew his interest in taking the child. DHS has not contacted these relatives recently to determine whether they would reconsider providing Listi's with a home.
In an effort to locate another alternative relative placement, appellant and Mr. Ranker suggested Diane Belknap ("Ms. Belknap"), the paternal aunt, to DHS. Ms. Belknap, who resides in Tennessee and is Mr. Ranker's sister, visited the child on numerous occasions. Since Ms. Belknap was a resident of another state, Ms. Niepsuj requested that the State of Tennessee complete an interstate compact placement request form and conduct a home study on Ms. Belknap.[8] Ms. Niepsuj also indicated that there may have been some bond between Ms. Belknap and Listi. However, the results of the interstate contact with the State of Tennessee revealed that the state's agency did not recommend Ms. Belknap as a suitable relative placement for Listi. As the juvenile court noted:
 "* * * [T]he family has had twenty-two (22) months for somebody in this family to come forward and inform the Court or the Portage County Department of Human Services that they are capable of taking this child; they can care for this child; can keep this child safely in their home; and, there will be no disruption with this placement. The Court finds that no family member has come forward requesting to take this child."
 Insofar as the wishes of the child are concerned, Listi is not sufficiently mature to express her desire. However, her guardian ad litem determined that Listi's best interest would be served by a grant of permanent custody to DHS for the purpose of adoption so that the child may be placed in a legally secure environment as soon as possible.
As to Listi's custodial history, the juvenile court recognized that Listi was taken into custody of DHS the day after her birth and has been in a foster home since the day she was released from the hospital. It was also noted that the child has a thriving relationship with her foster parents.
Regarding Listi's need for a legally secure permanent placement, both the guardian ad litem and Ms. Niepsuj stated that Listi is in need of a legally secure permanent placement, and that there is no other way to achieve that type of placement without a grant of permanent custody to DHS. This factor, however, will be addressed separately in appellant's second assignment of error.
Thus, there was clear and convincing evidence underlying the juvenile court's determination that it was in the best interest of the child that permanent custody be granted to DHS. Accordingly, appellant's first assignment of error is meritless.
In the second assignment of error, appellant has presented two separate issues for our review. First, appellant argues that the child could have received permanent placement without the grant of permanent custody to DHS. Here, appellant seems to be arguing that the juvenile court should have placed the child in long-term foster care instead of granting DHS's motion for permanent custody.
We initially recognize that within the juvenile court's judgment entry, there is no indication that the court considered long-term foster care as an alternative. This may be due to the fact that appellant failed to make a formal request for the court to consider long-term foster care.[9]
In the absence of a formal motion by appellant, we see no error in the juvenile court failing to consider long-term foster care as an alternative to granting permanent custody to DHS. In the Matter of Efaw
(Apr. 21, 1998), Athens App No. 97CA49, unreported, at 6, 1998 WL 224905 (holding that the trial court did not err in failing to consider long-term foster care as an alternative to granting permanent custody in the absence of a formal motion by appellant to consider long-term foster care).
Even if appellant made a formal request for the court to consider long-term foster care, such an option finds no support in the record. R.C. 2151.353 states in pertinent part:[10]
 "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
 "(5) Place the child in long term foster care * * * if a public children services agency or a private child placing agency requests the court to place the children in long term foster care and if the court finds, by clear and convincing evidence, that long term foster care is in the best interest of the child and that one of the following exists:
 "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care;
 "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child * * * and the child retains a significant and positive relationship with a parent or relative;
 "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living." (Emphasis added.)
 The record reveals that there was no such request by DHS, and, consequently, the juvenile court was under no obligation to order long-term foster care as an alternative. In the Matter of Duff (Aug. 10, 1994), Licking App. No. 93 CA 131, unreported, at 2, 1994 WL 478012.
Further, there was no evidence that Listi fit into any of the situations enumerated in (a) through (c). There was no evidence that Listi was "unable to function in a family-like setting and must remain in residential or institutional care" because of "physical, mental, or psychological problems or needs[.]" At the time of permanent custody hearing, she was living in a foster family and was developmentally on target. The child has not retained a significant and positive relationship with appellant or any relative, and adoption is in her best interest. Finally, Listi is below the age of sixteen. Thus, based upon the clear dictates of R.C. 2151.353, appellant's second assigned error is not well-taken.
Additionally, appellant presents a second issue for our consideration under her second assignment of error. Here, appellant sets forth the contention that Ms. Belknap was an appropriate relative available to parent the child. According to appellant, Ms. Belknap was willing and able to care for Listi, and there was no direct testimony which was not hearsay that refuted her availability. Further, appellant challenges the admissibility of the interstate compact placement request form and the attached report of the home study on grounds that the report is hearsay and does not fall into any hearsay exception.
Permanent custody hearings are adjudicatory in nature, and therefore, require compliance with the rules of evidence. Brofford at 873. Evidentiary rulings are within the discretion of the trial court. In reS. (1995), 102 Ohio App.3d 338, 343, citing State v. Long (1978),53 Ohio St.2d 91, 98. We will not disturb such rulings absent an abuse of discretion. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157. It is well-settled that a court cannot admit hearsay in adjudicatory proceedings unless an exception is applicable. Brofford at 873.
As was mentioned earlier, in an effort to locate another alternative relative placement, appellant and Mr. Ranker suggested Ms. Belknap to DHS. Since Ms. Belknap was a resident of another state, Ms. Niepsuj requested that the State of Tennessee complete an interstate compact placement request form and conduct a relative home study on Ms. Belknap. During the permanency hearing, Ms. Niepsuj testified as to the interstate contact made with the State of Tennessee. The Tennessee Department of Children's Services, however, did not recommend Ms. Belknap as a suitable relative placement for Listi. Based on this information, Ms. Niepsuj testified that DHS filed its motion for permanent custody, and Ms. Belknap was no longer considered as a potential relative placement for Listi.
Upon review, the juvenile court did not err in admitting into evidence the interstate compact placement request form and the attached report. Evid.R. 803(8) enumerates a public record and report exception to the hearsay rule:
 "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."
 The interstate compact placement request form and the attached report received by DHS from the Tennessee Department of Children's Services falls within the 803(8) exception under (a) because it is a record setting forth the activity of that agency.[11]
Moreover, the interstate compact placement request, which is codified in Ohio at R.C. 5103.20 states the following in Article III, section D:
 "The child shall not be sent, brought, or cause to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child." (Footnote omitted.)
 Thus, placing the child with Ms. Belknap was not a viable option in this matter because the interstate compact could not be entered into since the Tennessee Department of Children's Services refused to approve placement of the child with Ms. Belknap.
Upon review, we determine that there was clear and convincing evidence to support the juvenile court's decision that it was in the best interest of the child to grant permanent custody to DHS. There was evidence in the record which demonstrated that the child would be better served by the grant of permanent custody to DHS for the purpose of adoptive placement. Such evidence included appellant's seeming lack of interest in maintaining communication or an ongoing relationship with her child, the child's need for stability and permanency, and the progress made by the child while in the care of her respective foster parents. Further, no suitable relative has come forward to take placement of Listi, and there is the possibility that Listi could be adopted by the foster parents as they have expressed an interest in adopting the child. Even if Listi was placed in an adoptive home other than that of the foster parents, Ms. Niepsuj stated that the child would be able to assimilate in another home because she has shown an ability to bond. Finally, the foster parents have expressed a willingness to assist Listi in such a situation. Accordingly, appellant's second assignment of error in also meritless.
Based on the foregoing analysis, appellant's two assignments of error are not well-taken, and the judgment of the juvenile court is hereby affirmed.
 _______________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., O'NEILL, J., concur.
[1] Ms. Niepsuj was the case worker for Listi and her parents since July 1997.
[2] We will examine the versions of R.C. 2151.414(E) in effect at the time the motion for permanent custody was filed on March 3, 1999. We note that the statute was amended effective March 18, 1999.
[3] We will examine the versions of R.C. 2151.414(D) in effect at the time the motion for permanent custody was filed on March 3, 1999. We note that the statute was amended effective March 18, 1999.
[4] As we mentioned earlier, an amendment to the case plan required both appellant and Mr. Ranker to submit to urine screens. However, it was later determined by a magistrate that only Mr. Ranker was to complete these screenings.
[5] Appellant and Mr. Ranker have never neglected, sexually abused, or physically abused Listi. The child has been in the custody of DHS since the day after she was born.
[6] The juvenile court adopted this case plan amendment on July 1, 1999.
[7] This last factor regarding the need for permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency will be examined in the second assignment of error as appellant addresses this particular factor as a separate assignment of error in her brief to this court.
[8] The issue of whether Ms. Belknap was an appropriate relative with which to place Listi and the admissibility of the interstate compact placement request form and the report from the State of Tennessee will be discussed in detail in the second assignment of error.
[9] An examination of the transcript reveals that counsel for appellant made the following remarks with regard to placement of Listi with the foster family:
 "The Court: Okay. What are the other bases for your request for dismissal [of the complaint]?
 "Mr. Loepp [counsel for appellant]: The other bases are the fact that the placement right now is with a foster family and if the child is removed — If this Court were to grant Permanent Custody, there's a risk which the Department can't apprise anyone of or anyone can apprise anyone of, of this child losing the only family that the child's known on a daily basis. And, they stated it's going to be like the loss of a grieving process of the loss of the mother or the father."
[10] We will examine the versions of R.C. 2151.353 in effect at the time the motion for permanent custody was filed on March 3, 1999. We note that the statute was amended effective March 18, 1999.
[11] The juvenile court however found these documents to fall within the business record exception to the hearsay rule.